**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND DIVISION**

| | |
|---|---|
| CP Energy Services, Inc., | |
| Plaintiff, | |
| v. | Case No. 7:25-cv-00167 |
| Petro-Flow Control, LLC d/b/a Green Machine, | JURY TRIAL DEMANDED |
| Petro Environmental Solutions, LLC d/b/a Green Machine | |
| Jon Paul Rountree, | |
| Troy Bollom, and | |
| Cortney LeGard, | |
| Defendants. | |

## <u>ORIGINAL COMPLAINT</u>

Plaintiff CP Energy Services, Inc. ("Plaintiff") files this Original Complaint for patent infringement against Defendants Petro-Flow Control, LLC d/b/a Green Machine ("Defendant Petro-Flow Control"), Petro Environmental Solutions, LLC d/b/a Green Machine ("Defendant Petro Environmental"), Jon Paul Rountree ("Defendant Rountree"), Troy Bollom ("Defendant Bollom"), and Cortney LeGard ("Defendant LeGard") (collectively "Defendants") for infringement of U.S. Patent Nos. 12,173,567 ("the '567 Patent") and 12,173,569 ("the '569 Patent") (collectively "Asserted Patents"), in support of which Plaintiff alleges as follows:

## I.    NATURE OF THE ACTION

1.    This is an action for patent infringement under 35 U.S.C. § 271 et seq. in which Plaintiff seeks damages and other relief, including an injunction prohibiting Defendants from making, using, selling, and offering to sell oil and gas well-stream sand separators so as to infringe one or more claims of the Asserted Patents.

## II.    THE PARTIES

2.    Plaintiff is a Delaware corporation having its principal place of business at 6301 Waterford Blvd, Oklahoma City, Oklahoma County, Oklahoma 73118.

3.    On information and belief, Defendant Petro-Flow Control is a Texas limited liability company with a principal place of business at 4600 ACR 473, Tennessee Colony, Anderson County, Texas 75757.

4.    On information and belief, Defendant Petro Environmental is a Texas limited liability company with a principal place of business at 4600 ACR 473, Tennessee Colony, Anderson County, Texas 75757.

5.    On information and belief, Defendant Rountree is an individual residing in Comal County, Texas.

6.    On information and belief, Defendant Bollom is an individual residing in Tarrant County, Texas.

7.    On information and belief, Defendant LeGard is an individual residing in Anderson County, Texas.

## III.    JURISDICTION AND VENUE

8.    Subject Matter Jurisdiction: This Court has exclusive subject matter jurisdiction over the causes of action asserted herein pursuant to 28 U.S.C. §§ 1331, 1367, and/or 1338.

9.    Personal Jurisdiction: This Court has personal jurisdiction over Defendants because each of Defendants currently resides in the State of Texas, has a regular and established place of business within the State of Texas, has had minimum contacts with the State of Texas sufficient to confer the Court with general personal jurisdiction, or has committed acts within the State of Texas giving rise to the claims asserted herein.

10.    Venue:

A.    On information and belief, Defendants all reside in the State of Texas, making venue in the judicial districts of Texas proper under 28 U.S.C. § 1400(b).

B.    On information and belief, Defendants have committed acts of infringement and have a regular and established place of business in the Western District of Texas, making venue in the Western District of Texas proper under 28 U.S.C. § 1400(b).

C.    On information and belief, Defendant Rountree is an officer, director, manager, agent, or representative of Defendant Petro-Flow Control and Defendant Petro Environmental. *See* Exhibit A (Texas Secretary of State record showing "Jon Paul Crabtree" is a managing member of Defendant Petro Environmental – typo in last name as "Crabtree" instead of "Rountree" – the "Crabtree" managing member has the same address as Defendant Rountree) and Exhibit B (Defendant Rountree's LinkedIn profile showing he is a business partner of Petro-Flow Control LLC, https://www.linkedin.com/in/jon-paul-rountree-25b3a81b6 (March 19, 2025)). Moreover, on information and belief Defendant Rountree's actions have induced and/or contributed to Defendant Petro-Flow Control's and/or Defendant Petro Environmental's infringement, and in the position as an

officer, director, manager, agent, or representative of Defendant Petro-Folow Control and Defendant Petro Environmental, Defendant Rountree has directed, ratified, and affirmed the infringement.

D.  On information and belief, Defendant Bollom is an officer, director, manager, agent, or representative of Defendant Petro-Flow Control and Defendant Petro Environmental. *See* Exhibit C (Defendant Bollom's LinkedIn profile stating he is an operating partner of "Petro Flow LLC – Green Machine," an operating partner of Defendant Petro Environmental, and an operating partner of Green Machine, https://www.linkedin.com/in/troy-bollom-27179586 (March 19, 2025)). Moreover, on information and belief Defendant Bollom's actions have induced and/or contributed to Defendant Petro-Flow Control's and/or Defendant Petro Environmental's infringement, and in the position as an officer, director, manager, agent, or representative of Defendant Petro-Flow Control and Defendant Petro Environmental, Defendant Bollom has directed, ratified, and affirmed the infringement.

E.  On information and belief, Defendant LeGard is an officer, director, manager, agent, or representative of Defendant Petro-Flow Control and Defendant Petro Environmental. *See* Exhibit D (Texas Secretary of State record showing Defendant LeGard is a managing member of Defendant Petro-Flow Control) and Exhibit A (Texas Secretary of State record showing Defendant LeGard is a managing member of Defendant Petro Environmental). Moreover, on information and belief Defendant LeGard's actions have induced and/or contributed to Defendant Petro-Flow Control's and/or Defendant Petro

Environmental's infringement, and in the position as an officer, director, manager, agent, or representative of Defendant Petro-Flow Control and Defendant Petro Environmental, Defendant LeGard has directed, ratified, and affirmed the infringement.

## IV.    FACTUAL BACKGROUND

11.    Since 2008, Plaintiff has provided oil and gas services and products, including completion services, flowback services, well testing services, premium thread work strings, and oil and gas well-stream sand separators and other oilfield equipment for rental. Plaintiff's services and products have been deployed across the United States, including in Colorado, Louisiana, New Mexico, North Dakota, Ohio, Pennsylvania, Texas, Utah, West Virginia, and Wyoming.

12.    Plaintiff's completion services, flowback services, well testing services relate to an early stage of fluid flow from a well before the well is officially set into "production" with permanent equipment at a well site. In the early stages of fluid flow from an oil or gas well—for example, after drilling, fracturing, and/or completion—the well stream can contain a high percentage of sand, water, and solids compared to later stages of well stream flow, such as in the later "production" stage. The sand and solids can be referred to as debris, and the larger solids can include fragments of rock or other solids (i.e., "plugs") that were dislodged during operations. During this early stage, temporary equipment can be used at the wellsite to separate the water from the sand and larger solids. The temporary equipment can include plug catchers, choke valves, and separators, for example.

13.    Some of Plaintiff's early-stage well flow technology is marketed and sold under the SAND COMMANDER® trademark, U.S. Trademark Registration No. 88/104,954.

14.    The SAND COMMANDER® product line includes early stage well-stream

separation technology that is patented in the Asserted Patents:



*See* Services, Flowback and Well Testing, https://www.cp.energy/services (March 18, 2025).

15.    Plaintiff has spent considerable investment and time in the development of the SAND COMMANDER® product line, including investment in United States patents and patents in foreign countries. The SAND COMMANDER® product line has evolved with innovation, and versions of the SAND COMMANDER® product line have been and/or are covered by U.S. Patent Nos. 10,807,022, 11,492,859, the'567 Patent, and the '569 Patent.

16.    Both the '567 Patent and the '569 Patent involve sand separation technology that has a vertical separator, a hopper, and one or more recirculation chambers for recovery of sand and water from a well stream. The '569 Patent additionally discloses a diffuser and shaker device, among other features.

17.    The '567 Patent claims a system and method that facilitate continuous circulation of material from a vertical circulation separator to a hopper, from the hopper to recirculation chambers, and from the recirculation chambers back to the vertical circulation separator.

18.    The '569 Patent claims a system and processes that facilitate continuous circulation of material from the hopper and from a recirculation chamber to a diffuser, from the diffuser to a shaker device, and from the shaker device back to the hopper.

19.     Plaintiff is the owner of each of the Asserted Patents, which are valid and enforceable in the U.S.

20.     In the development of SAND COMMANDER® product line, Plaintiff employed each of Defendant Rountree and Defendant Bollom. Defendant Rountree was employed by Plaintiff from on or about April 16, 2018 to on or about April 22, 2024. Defendant Bollom was employed by Plaintiff from on or about April 16, 2018 to on or about June 21, 2024.

21.     Each of Defendant Rountree and Defendant Bollom is listed as an inventor on the '567 Patent, and each of Defendant Rountree and Defendant Bollom assigned his inventor rights to Plaintiff in writing.

22.     On information and belief, Defendant Rountree and Defendant Bollom coordinated with Defendant Cortney LeGard, Defendant Petro-Flow Control, and Defendant Petro Environmental to make, use, offer for sale, and sell a copy of Plaintiff's SAND COMMANDER® technology having features covered by the Asserted Patents.

23.     On or about October 2024, Plaintiff became aware of the copy of Plaintiff's patented SAND COMMANDER® technology that the Defendants refer to as the "Green Machine."

24.     Defendants offer for sale the Green Machine on the website at https://www.petroflowllc.com/petro-environmental:



*See* Exhibit E.

25.     The '567 Patent and the '569 Patent both issued on December 24, 2024.

26.     On or around December 26, 2024, Plaintiff sent a Cease & Desist Letter to Defendant Rountree and Defendant Bollom, providing actual notice of the Asserted Patents and notice that the Green Machine infringes one or more claims of the Asserted Patents, requesting that Defendant Rountree and Defendant Bollom cease and desist any manufacture, offer to sell, sale, and/or use of the Green Machine. Plaintiff has received no response from Defendant Rountree or from Defendant Bollom.

27.     On or around January 12, 2025, after receiving the Letter to Defendant Bollom as undeliverable, Plaintiff resent the Cease & Desist Letter to a second address for Defendant Bollom. Plaintiff has received no response from Defendant Bollom.

28.     On or around February 7, 2025, Plaintiff sent a Cease & Desist Letter to the Tennessee Colony, Texas address for Defendant Petro-Flow Control. The Letter requested that Defendant Petro-Flow Control cease and desist any manufacture, offer to sell, sale, and/or use of

the Green Machine. The Letter additionally requested that Petro-Flow Control remove the Green Machine from its website. Plaintiff has received no response from Defendant Petro-Flow Control, and the website still offers to sell the Green Machine. *See* Exhibit E.

29.    According to Texas Secretary of State records, the existence of Defendant Petro Flow Control was forfeited by Defendant LeGard on or about February 21, 2025, after Plaintiff sent the Cease & Desist Letter to Defendant Petro-Flow Control. *See* Exhibit F.

30.    On or about March 2025, Plaintiff received a copy of The Green Machine Flyer that Defendants were using to solicit Plaintiff's customers for services covered by the '567 Patent and the '569 Patent using the infringing Green Machine. *See* Exhibit G.

31.    Because Plaintiff's efforts to resolve Defendants' infringement outside of a lawsuit were unsuccessful, and because Defendants were nonresponsive to Plaintiff's Cease & Desist Letters, Plaintiff files this Original Complaint asserting claims of patent infringement.

## V.    CAUSES OF ACTION

32.    On information and belief, Defendants have directly and/or indirectly committed and continue to commit acts of patent infringement related to making, using, selling, or offering to sell an oil and gas well-stream sand separator the Defendants refer to as the "Green Machine," which infringes one or more claims of one or more of the Asserted Patents owned by Plaintiff as further described below.

### Count I – Infringement of U.S. Patent No. 12,173,567 (the '567 Patent)

33.    Plaintiff hereby incorporates by reference the allegations of the previous paragraphs of this Complaint.

34.    The '567 Patent, entitled "Separator System and Method," was issued by the United States Patent and Trademark Office on December 24, 2024. The '567 Patent is a continuation of

U.S. Patent No. 11,492,859, which is a continuation-in-part of U.S. Patent No. 10,807,022.

35.    A copy of the '567 Patent is attached hereto as Exhibit H.

36.    Plaintiff is the owner of the '567 Patent, which is valid and enforceable in the U.S.

37.    The '567 patent has a total of thirteen claims, with two claim types. Claims 1-9 are listed as system claims, and claims 10-13 are listed as method claims.  Independent claims 1 and 10 of the '567 Patent are reproduced below:

1. A separator system comprising:

a main unit comprising:

a plurality of recirculation chambers arranged to separate a portion of a material including water and sand, each of the plurality of recirculation chambers having internal angled sides and a suction port through which the sand is continuously circulated to a vertical circulation separator;

at least one internal baffle provided between one or more of the plurality of recirculation chambers over which the material flows forcing sand down to the suction port in each of the plurality of recirculation chambers;

a tank within the main unit formed by a partition; and

a hopper arranged to receive the material from the vertical circulation separator, wherein the plurality of recirculation chambers trap the portion of the material that escapes the hopper.

10. A method of separating a material in a separator system, comprising:

      receiving a material comprising a hazardous material, water, and sand into a hopper;

      trapping a portion of the material that escapes the hopper in a plurality of recirculation chambers, each of the plurality of recirculation chambers having internal angled sides and a suction port positioned at a crux of the internal angled sides; and

      continuously recirculating a residual sand from the suction port to a vertical circulation separator and then to the hopper.

38.    At least system claims 1, 3, and 5-9 and method claims 10-12 are infringed by one or more of Defendants' manufacture, use, sale, or offer to sell the Green Machine without license or authorization and in violation of 35 U.S.C. § 271(a).

39.    Defendant Rountree, Defendant Bollom, and Defendant LeGard are knowingly and intentionally inducing one or more of Defendant Petro-Flow Control and Defendant Petro Environmental to infringe claims 1, 3, and 5-12 of the '567 Patent without license or authorization and in violation of U.S.C. § 271(b) by using the design and specifications of Plaintiff's patented technology to enable one or more of Defendant LeGard, Defendant Petro-Flow Control, and Defendant Petro Environmental to manufacture, offer for sale, and sell the Green Machine.

40.    Defendants are contributing to the infringement by others without license or authorization and in violation of U.S.C. § 271(c) by making, offering for sale, and selling the Green Machine that enables performance by others of the method set forth in at least claims 10-12 of the '567 patent. Plaintiff's patented method that can be performed by others using the Green Machine

is not a staple article of commerce and is not a commodity for commerce suitable for substantial non-infringing use.

41.    Defendant Rountree has had actual notice of the '567 Patent since at least as early as December 26, 2024, when Plaintiff mailed a Cease & Desist Letter to Defendant Rountree via FedEx. Since December 26, 2024, Defendant Rountree's continued infringement with notice of the '567 Patent and without taking any steps to avoid infringement of the '567 Patent constitutes willful infringement.

42.    Defendant Bollom has had actual notice of the '567 Patent since at least as early as January 13, 2025, when Plaintiff mailed a notice letter to Defendant Bollom via FedEx.  Since January 13, 2025, Defendant Bollom's continued infringement with notice of the '567 Patent and without taking any steps to avoid infringement of the '567 Patent constitutes willful infringement.

43.    Defendant Petro-Flow Control has had actual notice of the '567 Patent since at least as early as February 7, 2025, when Plaintiff mailed a Cease & Desist Letter to Defendant Petro-Flow Control via FedEx. Since February 7, 2025, Defendant Petro-Flow Control's continued infringement with notice of the '567 Patent and without taking any steps to avoid infringement of the '567 Patent constitutes willful infringement.

44.    Defendant LeGard has had actual notice of the '567 Patent since at least as early as the filing of this Original Complaint. Alternatively, Defendant LeGard has had actual notice of the '567 Patent since February 7, 2025, when Plaintiff mailed a notice letter to Defendant Petro-Flow Control to the attention of Defendant LeGard via FedEx.  Defendant LeGard's continued infringement with notice of the '567 Patent and without taking any steps to avoid infringement of the '567 Patent constitutes willful infringement.

45.    Defendant Petro Environmental has had actual notice of the '567 Patent since at

least as the filing of this Original Complaint. Alternatively, Defendant Petro Environmental has had actual notice at least as early as December 26, 2024, when Plaintiff mailed a Cease & Desist Letter to Defendant Rountree via FedEx, at least because Defendant Rountree is a managing member of Petro Environmental. Alternatively, Defendant Petro Environmental has also had actual notice of the '567 Patent since February 7, 2025, when Plaintiff mailed a notice letter to Defendant Petro-Flow Control to the attention of Defendant LeGard via FedEx, at least because Defendant LeGard is a managing member of Defendant Petro Environmental. Defendant Petro Environmental's continued infringement with notice of the '567 Patent and without taking any steps to avoid infringement of the '567 Patent constitutes willful infringement.

46.      Plaintiff has been damaged and continues to suffer irreparable harm and damages as a result of Defendants' infringement of the '567 patent, including by way of lost sales of Plaintiff's systems and services covered by the '567 patent or at a minimum a reasonable royalty to compensate for the infringement.

### Count II – Infringement of U.S. Patent No. 12,173,569 (the '569 Patent)

47.      Plaintiff hereby incorporates by reference the allegations of the previous paragraphs of this Complaint.

48.      The '569 Patent, entitled "Continuous Recirculation for Separation of Fluids during Drill Out and Flow Back," was issued by the United States Patent and Trademark Office on December 24, 2024. The '569 Patent is a continuation-in-part of U.S. Patent Application No. 18/484,666, which is a continuation of the '567 Patent, which is a continuation of U.S. Patent No. 11,492,859, which is a continuation-in-part of U.S. Patent No. 10,807,022.

49.      A copy of the '569 Patent is attached hereto as Exhibit I.

50.      Plaintiff is the owner of the '569 Patent, which is valid and enforceable in the U.S.

51.    The '569 Patent has four independent claims: process claim 1, system claim 9, process claim 17, and process claim 20.  The '569 patent has a total of twenty claims. Claims 1-8 are listed as process claims, claims 9-16 are listed as system claims, claims 17-19 are listed as process claims, and claim 20 is a process claim.  Independent claims 1, 9, 17, and 20 are reproduced below:

1. A process comprising:

receiving a sand removal feed comprising sand and water into a first mixture contained in a hopper;

flowing a first portion of the first mixture from the hopper to a diffuser;

flowing a second portion of the first mixture from the hopper into a second mixture comprising sand and water that is contained in a recirculation chamber;

flowing a first portion of the second mixture from the recirculation chamber to the diffuser;

flowing a second portion of the second mixture to a gas separator;

flowing a diffuser mixture comprising the first portion of the first mixture and the first portion of the second mixture from the diffuser to a shaker device; and

flowing a shaker recycle liquid from the shaker device to the hopper.

9. A system comprising:

a hopper having an interior configured to contain a first mixture comprising sand and water, wherein the hopper has a hopper bottom outlet positioned on a bottom portion of the hopper;

a recirculation chamber having an interior configured to contain a second mixture comprising sand and water, a first outlet positioned on a bottom portion of the recirculation chamber, and a second outlet positioned on the bottom portion of the recirculation chamber;

a diffuser having a diffuser inlet fluidly coupled to the hopper bottom outlet of the hopper and to the first outlet of the recirculation chamber, wherein the diffuser has a diffuser outlet; and

a shaker device positioned at least partially below the diffuser and at least partially above the hopper.

17. A process comprising:

continuously recirculating sand and water in a first continuous recirculation loop, wherein the first continuous recirculation loop comprises:

i) a first fluid path formed between a hopper and a recirculation chamber;

ii) a second fluid path formed between the hopper and a diffuser;

iii) a third fluid path formed between the recirculation chamber and the diffuser;

iv) a fourth fluid path formed between the diffuser and a shaker device; and

v) a fifth fluid path formed between the shaker device and the hopper;

wherein continuously recirculating sand and water in the first continuous recirculation loop comprises:

flowing a first portion of a first mixture contained in the hopper through the second fluid path;

flowing a second portion of the first mixture in the first fluid path;

flowing a first portion of a second mixture contained in the recirculation chamber in the third fluid path;

flowing a combined mixture comprising the first portion of the first mixture and the first portion of the second mixture in the fourth fluid path; and

flowing a shaker recycle liquid in the fifth fluid path.

20. A process for operating a recirculation chamber of a sand removal apparatus, wherein the sand removal apparatus comprises a hopper, a recirculation chamber, and a tank, the process comprising:

receiving, by the recirculation chamber, a portion of a first mixture comprising sand and water that is contained in the hopper

from the hopper into a second mixture comprising sand and water

that is contained in the recirculation chamber;

flowing a first portion of the second mixture from the

recirculation chamber to a diffuser;

flowing a second portion of the second mixture from the

recirculation chamber to a gas separator; and

optionally flowing a third portion of the second mixture from

the recirculation chamber to the tank.

52.    At least the process claims 1-8, system claims 9-15, process claims 17-19, and

process claim 20 of the '569 Patent are infringed by one or more of Defendants' manufacture, use,

sale, or offer to sell the Green Machine without license or authorization and in violation of 35

U.S.C. § 271(a).

53.    Defendant Rountree, Defendant Bollom, and Defendant LeGard are knowingly and

intentionally inducing one or more of Defendant Petro-Flow Control and Defendant Petro

Environmental to infringe claims 1-20 of the '569 Patent without license or authorization and in

violation of U.S.C. § 271(b) by using the design and specifications of Plaintiff's patented

technology to enable one or more of Defendant LeGard, Defendant Petro-Flow Control, and

Defendant Petro Environmental to manufacture, offer for sale, and sell the Green Machine.

54.    Defendants are contributing to the infringement by others without license or

authorization and in violation of U.S.C. § 271(c) by making, offering for sale, and selling the Green

Machine that enables performance by others of the process set forth in at least claims 1-8 and 17-

20 of the '569 patent. Plaintiff's patented process that can be performed by others using the Green

Machine is not a staple article of commerce and is not a commodity for commerce suitable for

substantial non-infringing use.

55.    Defendant Rountree has had actual notice of the '569 Patent since at least as early as December 26, 2024, when Plaintiff mailed a Cease & Desist Letter to Defendant Rountree via FedEx. Since December 26, 2024, Defendant Rountree's continued infringement with notice of the '569 Patent and without taking any steps to avoid infringement of the '569 Patent constitutes willful infringement.

56.    Defendant Bollom has had actual notice of the '569 Patent since at least as early as January 13, 2025, when Plaintiff mailed a notice letter to Defendant Bollom via FedEx.  Since January 13, 2025, Defendant Bollom's continued infringement with notice of the '569 Patent and without taking any steps to avoid infringement of the '569 Patent constitutes willful infringement.

57.    Defendant Petro-Flow Control has had actual notice of the '569 Patent since at least as early as February 7, 2025, when Plaintiff mailed a Cease & Desist Letter to Defendant Petro-Flow Control via FedEx. Since February 7, 2025, Defendant Petro-Flow Control's continued infringement with notice of the '569 Patent and without taking any steps to avoid infringement of the '569 Patent constitutes willful infringement.

58.    Defendant LeGard has had actual notice of the '569 Patent at least since the filing of this Original Complaint. Alternatively, Defendant LeGard has had actual notice of the '569 Patent since at least as early as February 7, 2025, when Plaintiff mailed a notice letter to Defendant Petro-Flow Control to the attention of Defendant LeGard via FedEx.  Defendant LeGard's continued infringement with notice of the '569 Patent and without taking any steps to avoid infringement of the '569 Patent constitutes willful infringement.

59.    Defendant Petro Environmental has had actual notice of the '569 Patent since at least since the filing of this Original Complaint. Alternatively, Defendant Petro Environmental has

had actual notice of the '569 Patent since at least as early as December 26, 2024, when Plaintiff mailed a Cease & Desist Letter to Defendant Rountree via FedEx, at least because Defendant Rountree is a managing member of Petro Environmental. Additionally or alternatively, Defendant Petro Environmental has also had actual notice of the '569 Patent since February 7, 2025, when Plaintiff mailed a notice letter to Defendant Petro-Flow Control to the attention of Defendant LeGard via FedEx, at least because Defendant LeGard is a managing member of Defendant Petro Environmental. Defendant Petro Environmental's continued infringement with notice of the '569 Patent and without taking any steps to avoid infringement of the '569 Patent constitutes willful infringement.

60.    Plaintiff has been damaged and continues to suffer irreparable harm and damages as a result of Defendants' infringement of the '569 patent, including by way of lost sales of Plaintiff's systems and services covered by the '569 patent or at a minimum a reasonable royalty to compensate for the infringement.

## VI.    PRAYER

Plaintiff seeks judgment and relief against Defendants, including that:

A.    Judgment against Defendants be entered on all claims herein;

B.    Defendants be adjudged and decreed to have infringed the Asserted Patents under 35 U.S.C. § 271(a), (b), and/or (c), literally and/or under the doctrine of equivalents, and that such infringement is willful;

C.    Plaintiff be awarded its damages in an amount not less than a reasonable royalty pursuant to 35 U.S.C. § 284 and that such amount be trebled by the court based on Defendants' willful infringement;

D.    Plaintiff be awarded its costs and pre- and post-judgement interest as permitted by

law and pursuant to 35 U.S.C. § 284;

     E.    This case be declared to be an "exceptional case" within the meaning of 35 U.S.C. § 285 and Plaintiff be awarded its reasonable attorneys' fees;

     F.    Entry of a preliminary and permanent injunction against Defendants (and any of their officers, agents, servants and employees) and all entities and individuals acting in concert with Defendants (including manufacturers), prohibiting the making, sale, offer for sale, and all other infringing activity related to the Green Machine; and

     G.    Such other and further relief, at law or in equity, to which Plaintiff may be justly entitled.

## VII.    JURY DEMAND

Plaintiff hereby demands a trial by jury on all claims and issues so triable.


Dated: April 16, 2025          Respectfully submitted,


                      */s/* Keith C. Rawlins
                      Keith C. Rawlins
                      Texas Bar No. 24060467
                      Scheef & Stone, LLP
                      500 N. Akard Street, Suite 2700
                      Dallas, Texas 75201
                      Phone: (214) 706-4200
                      keith.rawlins@solidcounsel.com

                      *Attorney for Plaintiff*